U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2017 OCT -2 PM 12: 19

CLERK

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| JOHN SULLIVAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GILMAN HOUSING TRUST INC., | ) | Case No.  2:17-CV-188 |
| | ) | |
| GILMAN PROPERTY MANAGEMENT | ) | Injunctive relief sought |
| INC., | ) | |
| | ) | |
| MOUNTAINVIEW ST. JAY HOUSING | ) | |
| LIMITED PARTNERSHIP, and | ) | |
| | ) | |
| HILLTOP FAMILY HOUSING | ) | |
| LIMITED PARTNERSHIP. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

### I. **PRELIMINARY STATEMENT**

1. Plaintiff John Sullivan brings this action pursuant to the Fair Housing Act, 42

U.S.C. § 3613, to enforce his right to transfer to an apartment in town as a reasonable

accommodation of his disabilities. He brings similar claims under the Rehabilitation Act

of 1973, 29 U.S.C. § 794, and Vermont's Fair Housing and Public Accommodations Act,

9 V.S.A. § 4503.

### II. **JURISDICTION**

2. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 in that this is "federal

question" litigation comprising a civil action arising under the laws of the United States.

3.  Supplemental jurisdiction on the state law claims is conferred by 28 U.S.C.
§ 1367.

4.  Jurisdiction is also conferred by 42 U.S.C. § 3613.

## III.  **PARTIES**

5.  Plaintiff John Sullivan is a natural person, residing in St. Johnsbury, Caledonia
County, Vermont, at Mountainview Apartments. Mr. Sullivan resides with his two
teenage sons, Dylan Sullivan, age 15, and Ryan Sullivan, age 14.

6.  The four defendants are the various corporate entities which own and manage the
housing at issue. The four entities operate jointly under the name "Rural*Edge*".  *See
generally* http://www.ruraledge.org/about-us/ and Rural*Edge* Resident Selection Plan,
approved Feb. 25, 2014, available at http://www.ruraledge.org/wp-
content/uploads/2016/01/Resident-Selection-Plan-approved-2.2014.pdf attached as
Plaintiff's Exhibit 1.  Mountainview St. Jay Housing Limited Partnership represented,
for example in Mr. Sullivan's lease, that Rural*Edge* is the managing agent for
Mountainview.

7.  Defendant Gilman Housing Trust Inc. [GHT] owns the trade name Rural Edge
and formerly operated under the trade name GHT Housing Limited Partnership. GHT is
a domestic non-profit corporation and is a general partner of both Mountainview St. Jay
Housing Limited Partnership and Hilltop Family Housing.

8.  Defendant Gilman Property Management Inc. [GPM] GPM is the managing agent
for both Mountainview, where Mr. Sullivan lives, and Hilltop, the development to which

he wants to move. Gilman Property Management Inc. is a domestic profit corporation incorporated in Vermont. GPM owns the trade name RuralEdge Property Management.

9.  Defendant Mountainview St. Jay Housing Limited Partnership is a domestic limited partnership which owns Mountainview, the development where Mr. Sullivan lives at present.

10. Defendant Hilltop Family Housing Limited Partnership is a domestic limited partnership which owns Hilltop Family Housing, the development to which Mr. Sullivan would like to move.

## IV.    STATUTORY BACKGROUND

### A. SECTION 515 RURAL HOUSING

11. Both Mountainview, where Mr. Sullivan lives, and Hilltop, to which he would like to move, were developed under § 515 of the Housing Act of 1949, 42 U.S.C. §§ 1485. They are what is known as RD 515 projects.

12. Section 1441 of Title 42 explicitly sets as a purpose for the Housing Act "the realization as soon as feasible of the goal of a decent home and a suitable living environment for every American family, thus contributing to the development and redevelopment of communities and to the advancement of the growth, wealth, and security of the Nation."

13. Mr. Sullivan, at all times material herein has been, and is, eligible for RD 515 housing, including the dwelling where he and his children reside at present and the dwelling to which he seeks to move.

14. Defendants are required by the rules for the RD 515 program to have a detailed management plan which must include their policy for tenant selection. 7 C.F.R. § 3560.102(ix). Defendants all use the same tenant selection plan, and that plan is attached as Plaintiff's Exhibit 1. Defendants are required by federal regulations to follow their tenant selection plan when selecting tenants. 7 C.F.R. § 3560.154.

## B. FAIR HOUSING ACT

15. The Fair Housing Act of 1968, as amended in 1988, declares that "It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601.

16. The Fair Housing Act prohibits discrimination against persons with one or more "handicaps." 42 U.S.C. § 3604(f). Failing to reasonably accommodate a person with a handicap "when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling" is unlawful discrimination within the meaning of the Act. 42 U.S.C. § 3604(f)(3)(B).

17. The Fair Housing Act also prohibits retaliation. "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.

18. "Handicap" is defined, in relevant part, as "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602(h).

## C. SECTION 504 OF THE REHABILITATION ACT

19. The Rehabilitation Act of 1973 declares that "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

20. Housing providers that receive federal financial assistance are subject to the requirements of Section 504 of the Rehabilitation Act of 1973. 29 U.S.C. § 794(a).

21. "Disability" is defined, in part, as "a physical or mental impairment that constitutes or results in a substantial impediment to employment" or disabled within the meaning of the Americans with Disabilities Act. 29 U.S.C. § 705(9).

## D. VERMONT'S FAIR HOUSING AND PUBLIC ACCOMMODATIONS ACT

22. The Vermont Act prohibits the refusal to make reasonable accommodations for people with disabilities. "It shall be unlawful . . . To refuse to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling unit." 9 V.S.A. § 4503 (a)(10).

23. The Vermont Act also prohibits retaliation. "A person shall not coerce, threaten, interfere, or otherwise discriminate against any individual (1) who has opposed any act or practice that is prohibited under section 4502 or 4503 of this title . . . (4) who is exercising or enjoying a right granted or protected by this chapter; or (5) who is believed by the person to have acted as described in subdivisions (1) through (4) of this subsection." 9 V.S.A. § 4506(e).

## V.     **FACTUAL ALLEGATIONS**

24. At all times material hereto, Mr. Sullivan has resided at 105 Mountainview Drive, St. Johnsbury, Vermont.

25. In 2009, Mr. Sullivan was treated for an atypical meningioma with brain surgery and radiation.

26. Mr. Sullivan now suffers from a traumatic brain injury with a permanent memory deficit, seizures, a mood disorder, and cortical blindness. As a result, he is unable to drive and has difficulty walking on uneven terrain.

27. The apartment where Mr. Sullivan lives is in a location outside of town and away from his sons' school and most services. It is on a busy road that is miles from a sidewalk and not safe for him to travel by foot.

28. Mr. Sullivan's housing situation is psychosocially destabilizing for him. It has led to increased stress and anxiety symptoms for him and has been directly detrimental to his physical and mental health.

29. Mr. Sullivan was recently diagnosed with acute stress disorder directly related to his housing situation.

30. At all times material hereto, all Defendants have known of Mr. Sullivan's handicap.

31. Mr. Sullivan has been requesting to move into town as a reasonable accommodation of his handicap since at least March 14, 2014. He has submitted multiple requests for such a move. In addition, numerous medical professionals, clergy, advocates, neighbors, and others have submitted requests on his behalf.

32. On April 9, 2014, Rural*Edge* acknowledged receipt of Mr. Sullivan's request to move into town "for the well-being of yourself and your children" and responded that they could not give him a "preferential" status on the waitlist.

33. In 2014, Mr. Sullivan specifically requested to move to Summer Street in St. Johnsbury.

34. In 2014, Mr. Sullivan gave Rural*Edge* a letter from his treating nurse practitioner, Diane Matthews, dated December 3, 2014, stating the medical reasons for Mr. Sullivan needing to move to a home that is more centrally located.

35. In 2015, Mr. Sullivan gave Rural*Edge* a letter from his oncologist, Ronald P. Kubica, M.D., dated August 10, 2015. It stated in relevant part "John Sullivan is followed for a brain tumor and as a result is unable to drive. Any assistance you could provide him in finding a place for him to live as close to his children's school is medically indicated and would be greatly appreciated."

36. In August of 2015, Mr. Sullivan submitted to Rural*Edge* a formal application to move to Hilltop. In response to the question why do you want to move to this property, he wrote "closer to my sons' school: I can't drive and my healthcare providers want me closer to interact with school programs, 'see letters'."

37. Rural*Edge* denied Mr. Sullivan's request to transfer to Hilltop on August 19, 2015 with a form letter in which the box "criminal record or drug related offense" was checked. After an appeal hearing and submission of a number of reference letters, this decision was overturned without explanation on September 9, 2015. On information and belief, Rural*Edge* told Mr. Sullivan he would still have to wait his turn on the list.

38. On April 18, 2017, Mr. Sullivan requested that Rural*Edge* put him at the top of any listing that would get him out of a situation that is dangerous for someone with his disability.

39. On April 21, 2017, Rural*Edge* denied Mr. Sullivan's request to be put at the top of the transfer list as a reasonable accommodation of his disabilities. The stated basis was that Rural*Edge*'s Resident Selection Policy "does not allow us to reprioritize and/or move anyone to the top of the list" and therefore the requested accommodation imposed an undue burden. Exh. 3 (*see also* Exh. 1),

40. The Property Resident Selection Policy specifically allows Rural*Edge* to reprioritize and move someone up the list based on medical reasons. "This Policy allows for the following types of transfers listed below in order of priority. . . . Rural*Edge* Property Management may transfer a resident(s) to another unit or another project for

medical reasons which are verified by a health professional." Rural*Edge* Resident
Selection Plan, Exh. 1, at ¶ 6(c).

41. Defendants are required, under the terms of the lease, to comply with all Federal
and State of Vermont housing laws applicable to this development and to any relevant
Rural Development regulations in effect. The Rural Development regulations require
Defendant to follow its tenant selection plan when selecting tenants. 7 C.F.R.
§ 3560.154.

42. On April 25, 2017, Mr. Sullivan submitted a Certification – Need for Reasonable
Accommodation signed by himself and his doctor, John Raser, M.D.  Exh. 4.

43. Rural*Edge* acknowledged receipt of this document on May 1, 2017, but it has not
otherwise responded directly to the request.  Exh. 5.

44. On May 12, 2017, Vermont Legal Aid wrote to Rural*Edge*'s attorney and stated
that it represented Mr. Sullivan. Mr. Sullivan, through his attorney, renewed his request
for reasonable accommodation and asked to resolve any barriers to such move even
before any apartment came open.  Exh. 6.

45. At a meeting on June 19, 2017, and on other occasions, Rural*Edge* has orally
stated that Mr. Sullivan would have to pay all legal fees Rural*Edge* incurred as a result of
Rural*Edge* having to hire legal counsel to respond to his request to move.

46. Mr. Sullivan's lease only allows legal fees to be taxed to the successful party in a
legal action. Federal regulations specifically prohibit the RD 515 project leases from
requiring the tenant to agree to pay legal fees and court costs for any action against the
tenant. 7 C.F.R. § 3560.156(d)(9).

47. On information and belief, the occupants of the upstairs apartment at 606 Summer Street started moving out at the end of August, 2017, and that apartment is now vacant.

48. 606 Summer Street is a three bedroom apartment owned by Hilltop Family Housing Limited Partnership, managed by Gilman Property Management Inc., and subsidized through the RD 515 program. It is subject to the Rural*Edge* Resident Selection Policy, Exh. 1.

49. On August 30, 2017, Mr. Sullivan, through his counsel, Maryellen Griffin of Vermont Legal Aid, requested to be transferred to the upstairs apartment at 606 Summer Street. He resubmitted the April 13, 2017 letter from Dr. Raser and pointed out the medical transfer policy in the Resident Selection Policy. He stated that it was worsening his symptoms not knowing whether or not Rural*Edge* would transfer him to this apartment. Exh. 7.

50. On August 30, 2017, Rural*Edge* staff emailed a group of Mr. Sullivan's providers that she understood that Mr. Sullivan, through Legal Aid, had inquired about moving to the Summer Street apartment, and that as a result of such inquiry, Rural*Edge* was reviewing the effectiveness of their staff time in working with Mr. Sullivan's care team.

51. On September 1, 2017 Mr. Sullivan, through his counsel Maryellen Griffin of Vermont Legal Aid, emailed to Rural*Edge* a letter from Mr. Sullivan's treating physician, John Raser, M.D. The letter, dated August 31, 2017, explains that in addition to his cortical blindness, Mr. Sullivan is now diagnosed with acute stress disorder related to his housing situation, and renews the request for Mr. Sullivan to be transferred into

town: "My professional opinion is that this move is medically necessary for John's health." Exh. 8.

52. On September 5, 2017 the Chief Executive Officer of Rural*Edge*, Trish Ingalls, sent out an email saying that she had become aware of the email exchanges of last week. That email stated, in relevant part, as follows: "Due to the care team's complete disregard of our efforts to support John, and absolute refusal to understand our resident selection policy, and because we are now forced to be represented by our legal counsel, no RuralEdge staff members will be available to be part of John's care team." Exh. 9.

53. Mr. Sullivan, through counsel, has inquired several more times about whether he can transfer to 606 Summer Street, but has not received a substantive response. Exh. 10, 11.

54. On September 13, 2017, Rural*Edge*'s attorney stated that Rural*Edge* had "yet to make a decision of any kind." Exh. 11. No further communication has been received from Rural*Edge* or any of the Defendants.

55. On September 25, 2017, Mr. Sullivan, through counsel, asked for an answer as to whether or not Mr. Sullivan would be transferred. Mr. Sullivan, again through counsel, said he would seek relief in federal court if he did not receive an answer by the close of business on Friday September 29, 2017. Exh. 12.

56. As of the time of filing this Complaint, Plaintff's undersigned attorney and law firm have not received any response -- written or otherwise -- to the letter attached hereto as Exhibit 12.

## VI.   CLAIMS FOR RELIEF

### COUNT I — FAILURE TO REASONABLY ACCOMMODATE

57. Mr. Sullivan hereby incorporates by reference his allegations contained in the paragraphs above.

58. By failing to grant Mr. Sullivan's requests to reasonably accommodate his disabilities, Defendants violated the Fair Housing Act. 42 U.S.C. § 3604(f).

59. By failing to grant Mr. Sullivan's requests to reasonably accommodate his disabilities, Defendants violated Section 504 of the Rehabilitation Act. 29 U.S.C. § 794.

60. By failing to grant Mr. Sullivan's requests to reasonably accommodate his disabilities, Defendants violated the Vermont Fair Housing and Public Accommodations Act. 9 V.S.A. § 4503(a)(10).

### COUNT II — RETALIATION

61. Mr. Sullivan hereby incorporates by reference his allegations contained in the paragraphs above.

62. By withdrawing from the care team and saying he would be charged with legal fees, Defendants unlawfully retaliated against Mr. Sullivan for exercising or enjoying the rights granted to him or protected by the Fair Housing Act, specifically 42 U.S.C. § 3604 and 42 U.S.C. § 3617.

63. By withdrawing from the care team and saying he would be charged with legal fees, Defendants unlawfully retaliated against Mr. Sullivan after he exercised his Section

4503 rights. This violated the Vermont Fair Housing and Public Accommodations Act. 9 V.S.A. § 4506(e).

## COUNT III – BREACH OF CONTRACT

64. Mr. Sullivan hereby incorporates by reference his allegations contained in the paragraphs above.

65. Because the lease incorporates by reference the federal regulations, and the federal regulations require Defendants to follow their Resident Selection plan, by failing to follow its Resident Selection Plan, Defendants have breached the lease with Mr. Sullivan.

> **WHEREFORE,** Plaintiff respectfully prays that this Court will enter an order that:
>
> A. Finds that Defendants have violated the federal and state laws cited above;
>
> B. Orders Defendants to immediately transfer Mr. Sullivan and his family to the open apartment at 606 Summer Street, or, if that apartment is no longer available, to a three bedroom apartment of similar quality, desirability, and location;
>
> C. Awards to Plaintiff such actual and punitive damages as he shall prove;
>
> D. Awards to Plaintiff the costs of this action, including a reasonable attorney's fee; and

E.  Grants such other and further relief as may be just and equitable under the

circumstances.

Dated in St Johnsbury, Vermont, this _____ day of October 2017.


By:      Maryellen Griffin
         Staff Attorney
         Vermont Legal Aid, Inc.
         mgriffin@vtlegalaid.org
         sberube@vtlegalaid.org
         802 748 8721 x 731